IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**AUSTIN RUSSELL**                                                                                          **Plaintiff**

**v.**                                              **No. 3:14-CV-154-JLH-JJV**

**CAROLYN W. COLVIN,**
**Acting Commissioner,**
**Social Security Administration**                                                        **Defendant**

## RECOMMENDED DISPOSITION

### Instructions

The following recommended disposition was sent to U. S. District Judge J. Leon Holmes. A party to this dispute may file written objections to this recommendation. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1] The objecting party must serve the opposing party with a copy of an objection. Failing to object within fourteen days waives the right to appeal questions of fact.[2] If no objections are filed, Judge Holmes may adopt the recommended disposition without independently reviewing all of the record evidence.

### Recommended Disposition

Austin Russell seeks judicial review of the denial of his application for disability income

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

benefits.[3] Russell is a certified dietary manager.[4] He claims he has been disabled since he lost is job as a hospital food director.[5] Russell based disability on painful feet, the human immunodeficiency virus (HIV), high blood pressure, diabetes, stress, abnormal liver and kidney function, gout, stomach ulcers, and a bad right shoulder.[6]

**The Commissioner's decision**. The Administrative Law Judge (ALJ) identified symptomatic HIV infection, diabetes mellitus, and obesity as severe impairments, but determined Russell can do some light work.[7] Because a vocational expert classified Russell's past work as a dietary manager as sedentary work, and because a person who can do light work can do sedentary work, the ALJ determined Russell can do his former work and denied the application.

After the Appeals Council denied a request for review, the ALJ's decision became the Commissioner's final decision for the purpose of judicial review.[8] Russell filed this case to challenge the decision.[9] In reviewing the decision, the court must determine whether substantial

---

[3] SSA record at p. 115 (applying on Sept. 4, 2011, and alleging disability beginning Aug. 12, 2011).

[4] *Id*. at p. 171.

[5] *Id*. at pp. 152 & 163.

[6] *Id*. at p. 151.

[7] *Id*. at p. 18 (requiring light work that permits walking at 30-45 minute intervals and sitting at 45-60 minute intervals, changing positions at those intervals, and occasional stooping).

[8] *See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[9] Docket entry # 1.

2

evidence supports the decision and whether the ALJ made a legal error.[10]

**Russell's allegations**.  Russell challenges one aspect of the ALJ's decision — the rejection of his doctor's medical statements.  Russell's doctor specializes in infectious diseases and treats Russell's HIV infection.  The doctor provided three statements; one about HIV, a second about diabetes, and a third about mental impairment.  Russell maintains the statements were entitled to controlling weight.[11]

**Applicable legal principles**.  A treating doctor's medical statement receives "controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."[12]  "While the opinions of treating physicians are entitled to special weight, they do not automatically control, since the record must be evaluated as a whole."[13]  An ALJ may discount or disregard a treating physician's opinion where other medical assessments are supported by better or more thorough medical evidence or where the treating physician renders inconsistent opinions that undermine the credibility of the discounted opinions.[14] The application of these legal principles shows no legal error.

**Treatment notes do not support the doctor's statements**.  Russell's primary impairment is HIV infection.  Treatment notes indicate Russell was doing well physically when he lost his job,

---

[10]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[11]Docket entry # 12.

[12]*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005).

[13]*Bentley v. Shalala*, 52 F.3d 784, 785-86 (8th Cir. 1995).

[14]*Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000).

but the job loss caused a lot of stress.[15] A few months later, Russell reported general malaise, fatigue, and low back pain that radiated to the left flank.[16] Russell had kidney stones.[17] After treatment, Russell had no complaint; he felt better; he looked well.[18] Several months later — a few months before the medical statements — Russell had no complaint; the doctor recommended weight loss, diet, and exercise.[19] The recommendation for exercise contradicts the physical limitations reported in the doctor's statements.[20]

**Prognostic testing does not support the doctor's statements**. "When a person tests positive for HIV infection, the doctor … measure[s] the amount of virus in the patient's blood. This level is called the viral load. The viral load helps the doctor to decide when to start drug treatment for HIV."[21] Stable or increasing viral load indicates disease progression and/or treatment failure; decreasing viral load indicates response to treatment. The treatment goal is an undetectable viral load — under 40 to 75, depending on the testing laboratory.[22] Russell's viral load has been

---

[15] SSA record at p. 199.

[16] *Id*. at p. 236.

[17] *Id*. at p. 237.

[18] *Id*. at p. 277.

[19] *Id.* at p. 265.

[20] *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (consistent recommendations to increase physical exercise are inconsistent with a claim of physical limitation).

[21] Genevieve Pham Kanter, Tish Davidson & Rebecca J. Frey, 1 The Gale Encyclopedia of Med. 97-98 (4th ed.).

[22] Just Diagnosed with HIV AIDS : Understand Your Test Results : Viral Load, available at https://www.aids.gov.

4

undetectable,[23] but the doctor reported disabling limitations.

**Prognostic testing shows no disease progression**. Doctors use blood tests to determine whether, and how rapidly, the infection is progressing and whether treatment is working.[24] For example, "[d]octors can monitor the health of AIDS patients by measuring the number or proportion of certain types of lymphocytes in the patient's blood."[25] A count of CD4+ lymphocytes between 500 and 1200/mm3 is normal; a count of less than 200 cells/mm3 indicates disease progression.[26] Russell's count is normal;[27] it was normal on the day the doctor completed the HIV statement.[28] Russell's lymphocyte count provides no basis for disabling limitations.

**Russell's symptoms do not support the doctor's statements**. "The symptoms of HIV infection vary according to the progress of the infection."[29] At Russell's stage, symptoms may include swelling of the lymph nodes for longer than three months, fevers and night sweats, loss of energy, weight loss, frequent yeast infections, persistent skin rashes or flaky skin, and short-term memory loss.[30] Russell complains about fatigue and joint pain. He hasn't deteriorated since he was working.

---

[23]SSA record at p. 216 (Aug. 18, 2011: 50), p. 259 (Nov. 16, 2011: not detected), p. 246 (Feb. 22, 2012: not detected) & p. 241 (Apr. 30, 2012: not detected).

[24]Ken R. Wells & Teresa G. Odle, 1 The Gale Encyclopedia of Med. 105 (4th ed.).

[25]*Id*. at p. 106.

[26]*Id*. at p. 110.

[27]SSA record at p. 214 (Aug. 18, 2011: 693), p. 258 (Nov. 16, 2011: 766), p. 245 (Feb. 22, 2012: 785), p. 241 (Apr. 30, 2012: 805) & p. 288 (Sept. 6, 2012: 728).

[28]*Id*. at p. 289.

[29]Genevieve Pham Kanter, Tish Davidson & Rebecca J. Frey, 1 The Gale Encyclopedia of Med. 95 (4th ed).

[30]*Id*. at p. 106.

If the HIV infection progresses to full-blown AIDS, a person can develop one or more opportunistic infections — that is, an "infection caused by an organism that does not cause disease in a person with a healthy immune system."[31] Russell has experienced no opportunistic infection.

**The medical statements are inconsistent**. In one statement, the doctor reported that Russell can stand for thirty minutes at a time, stand/walk about four hours a day, sit for four hours in eight-hour day, and walk half a block before resting or experiencing severe pain.[32] In a contemporaneous statement, he reported that Russell can stand for twenty minutes at a time, stand/walk less than two hours a day, sit for six hours in eight-hour day, and walk one and a half blocks before resting or experiencing severe pain.[33] The reported limitations are inconsistent. The inconsistency undermines the medical statements.

**Under these circumstances, the doctor's medical statements were not entitled to controlling weight**. The ALJ properly relied on the agency medical examiner's report and agency medical expert opinion. The medical examiner had no negative medical findings.[34] The medical expert opined that Russell can do medium work.[35] The ALJ gave Russell the benefit of fatigue — his primary complaint — by limiting him to light work. The vocational expert classified a dietary manager as sedentary work, but stated that Russell last performed the work at a light level.[36] Either way, the vocational evidence shows Russell can do his former work.

---

[31]*Id*. at p. 99.

[32]SSA record at p. 293.

[33]*Id*. at p. 298.

[34]*Id*. at pp. 232-35.

[35]*Id*. at p. 58.

[36]*Id*. at pp. 46-47.

## **Recommended Disposition**

    Without doubt, Mr. Russell suffers from some degree of limitation. And there is clearly some evidence that supports his claim of disability. But it is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ. Here, a reasonable mind would accept the evidence as adequate to support the decision because the medical evidence reflects no disabling symptoms and vocational evidence shows Russell can do his past work. So substantial evidence supports the ALJ's decision and the ALJ did not err. For these reasons, the undersigned magistrate judge recommends denying Russell's request for relief (docket entry # 2) and affirming the Commissioner's decision.

    Dated this 26th day of May, 2015.

                                                    _____
                                                    JOE J. VOLPE
                                                    UNITED STATES MAGISTRATE JUDGE